**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID No. 2202008181 |
| | ) | |
| SHAQUAN GUILFORD, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: July 7, 2025
Dated Decided: August 1, 2025

## ORDER DENYING RULE 35 AND RULE 61 MOTIONS

Defendant Shaquan Guilford, filing pro se, moves this Court for relief from his 2023 conviction and sentence under Superior Court Criminal Rule 35(a) arguing he was illegally sentenced; under Rule 35(b) requesting his sentence be modified; and under Rule 61 claiming he is entitled to postconviction relief. Guilford's claims are procedurally barred or lack merit; accordingly, all three motions are DENIED.

### I.    BACKGROUND[1]

On March 28, 2022, Guilford was indicted for Murder First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Possession

---

[1] The facts recited herein are taken from the record in Case No. 2202008181 and, unless otherwise noted, all Docket Items ["D.I. #"] refer to that case.

1

of a Firearm by a Person Prohibited ("PFBPP"), Carrying a Concealed Deadly Weapon, Receiving a Stolen Firearm, and Resisting Arrest.[2]

Guilford pled guilty on December 14, 2022, with the assistance of counsel, to the significantly reduced charges of Manslaughter (as a lesser included offense of Murder First Degree), PFDCF, and PFBPP, as well as a Violation of Probation ("VOP") in an unrelated prior case,[3] in exchange for dismissal of the remaining charges in the indictment.[4] Pursuant to the Plea Agreement, the State capped its total unsuspended Level V recommendation at 20 years with the proviso "Level 5 is consecutive."[5] Guilford signed the Plea Agreement and Truth-in-Sentencing Guilty Plea Form ("TIS Form") acknowledging the minimum mandatory period of incarceration for the charges was a total of 17 years Level V,[6] with the potential of

---

[2] D.I. 2.

[3] *See* Case No. 1710016401.

[4] *See* D.I. 25 Plea Agreement ["Plea Agr."]; D.I. 54 December 14, 2022, Plea Hearing Transcript ["Plea Tr. #"].

[5] Plea Agr.

[6] The Plea Agreement provides the "Defendant acknowledges that he faces a total minimum mandatory sentence of 17 years at Level 5. Manslaughter carries a 2 year minimum mandatory sentence; Defendant faces a 10 year minimum mandatory sentence for PFBPP and a 5 year minimum mandatory sentence for PFDCF due to his prior violent felony convictions for [PFBPP] (2017) and Drug Dealing (2015)."

70 years Level V,[7] based upon the statutory ranges of 2 to 25 years for Manslaughter, 5 to 25 years for PFDCF, 10 to 15 years for PFBPP, and 0 to 5 years for the VOP.[8]

During a colloquy with the Court, Guilford confirmed no one had promised him what his sentence would be and stated he understood he faced 17 years Level V minimum mandatory and that the Court could sentence him to up to 70 years Level V.[9] Guilford also stated he was satisfied with trial counsel's representation.[10] The Court ordered a presentence investigation and set Guilford's sentencing for a later date.

After conferring with defense counsel and prior to Guilford's sentencing, the prosecution wrote the Court regarding an "error" in the plea paperwork:[11]

> Pursuant to 11 Del. C. Sec. 3901(d), the Court must run all PFDCF sentences consecutive to other sentences in a single case because the underlying offense for the PFDCF charge was a violent felony. However, the Court *may, in its discretion*, impose concurrent sentences on Manslaughter, PFBPP and the [VOP]. Therefore, if the Court chooses to run those sentences concurrent[ly] and only imposes the minimum mandatory sentence of 10 years on the PFBPP, the total minimum mandatory sentence the defendant faces is fifteen years, not seventeen years as indicated on the plea paperwork. [12]

---

[7] *See* TIS Form D.I. 25.

[8] Plea Agt. and TIS Form.

[9] Plea Tr. 6:20–7:2, 7:3–5, 7:22–8:1.

[10] TIS Form; Plea Tr. 6:3-5.

[11] D.I. 27.

[12] D.I. 27 (emphasis added). *See also*, 11 *Del. C.* § 3901(d), provides the Court will determine whether a defendant's sentence of confinement should run concurrently or

3

At the March 3, 2023 Sentencing Hearing, Guilford admitted, "I'm very, very sorry for my actions, and I accept full responsibility for my actions."[13] The Court found Guilford's custody status at the time of the offense and lack of amenability to lesser sanctions were aggravators[14] and sentenced him to a total of 20 years of unsuspended Level V-time including 17 years minimum mandatory, to run consecutively:

> a. Manslaughter – 25 years Level V, suspended after 5 years, for varying levels of supervision, with 2 years minimum mandatory.
>
> b. PFDCF – 5 years Level V, with no probation to follow, with 5 years minimum mandatory.
>
> c. PFBPP – 10 years Level V, with no probation to follow, with 10 years minimum mandatory.
>
> d. VOP – discharged as unimproved.[15]

Guilford did not appeal his convictions.

Just over a month later, on April 17, 2023, Guilford, filing pro se, moved to modify his sentence under Rule 35(b) ("First Rule 35(b) Motion").[16] In support, Guilford argued he received a letter from his trial counsel stating the "Manslaughter

---

consecutively with any other sentence imposed by the State—but no sentence for PFDCF will run concurrently with any other sentence.

[13] D.I. 30 Sentencing Transcript ["Sent. Tr. #"] 17:21–23; D.I. 39.

[14] Sent. Tr.  19:12–14.

[15] *Id.* at 19:10–11, 20:9–13; D.I. 30.

[16] D.I. 31 & 32.

and PFBPP charges can run concurrently according to the Benchbook statutes."[17] That same day, Guilford moved for postconviction relief, followed by ten amendments or addenda to the initial motion (collectively, "Rule 61 Motion.").[18]

The Court denied Guilford's First Rule 35(b) Motion as meritless by Order dated May 16, 2023.[19] In pertinent part, the Court found no modification was warranted because Guilford's sentence was imposed after he signed a Plea Agreement and acknowledged in open court that he understood the mandatory minimum and maximum penalties provided by law and the range of possible penalties, including the sentence imposed upon him.[20] The Court further held the 17 years Level V minimum mandatory sentence was statutorily mandated and thus prohibited from modification.[21]

The Rule 61 Motion is Guilford's first and was timely filed. Guilford argues he is entitled to postconviction relief because law enforcement engaged in misconduct, the prosecution suppressed evidence in violation of *Brady v. Maryland*,[22] and his defense counsel was ineffective. On September 6, 2023, the

---

[17] D.I. 31 at *2.

[18] *See* D.I. 32 and addenda or amendments (D.I. 36, 37, 37C, 43, 48, 50, 53, 56, 68 and 70).

[19] D.I. 34.

[20] *Id.* at 2.

[21] *Id.*

[22] *Brady v. Maryland*, 373 U.S. 83 (1963).

Court ordered the State to respond to Guilford's *Brady* claim that the prosecution withheld exculpatory information, including (1) the victim's deleted phone call log and deleted texts and (2) a portion of the surveillance footage from the James and Jesse Barbershop (the "Barbershop").[23] The prosecution initially responded that it provided the victim's phone extraction and surveillance footage to the defense.[24] But it supplemented its response after conferring with defense counsel, who stated she did not receive the full two-hour surveillance footage from the Barbershop.[25] The prosecution responded it did, in fact, supply the full footage to defense counsel on May 11, 2022 and, in any event, the disputed footage was not exculpatory or prejudicial.[26]

Guilford moved pro se to expand the record and compel production of his entire discovery file.[27] The next day, the Court ordered Guilford to clarify his request for relief, instructed the prosecution to confirm the existence of the full video footage from the Barbershop, and queried whether it could be sent to Guilford.[28] The State advised it sent the full footage to defense counsel a second time on September 19,

---

[23] D.I. 38 (the missing surveillance footage showed the victim banging on a window with a gun).

[24] D.I. 40.

[25] D.I. 41, 42.

[26] *Id.*

[27] D.I. 43–44.

[28] D.I. 45.

2023, but could not send it directly to the defendant due to restrictions at the prison.[29] Next, Guilford requested representation for his Rule 61 Motion, which the Court ordered.[30]

Guilford's postconviction claims are fairly summarized as (1) the prosecution violated *Brady* by failing to turn over information to the defense; (2) his Level V sentences for Manslaughter and PFBPP should have merged; (3) law enforcement engaged in misconduct; and (4) his defense counsel was ineffective.

In February 2024, Guilford moved a second time to modify his sentence under Rule 35(b) ("Second Rule 35(b) Motion").[31] The next month, he moved pro se to correct an illegal sentence under Rule 35(a)[32] and amended that motion in May 2024 and July 2025 (collectively, "Rule 35(a) Motion").[33]

Meanwhile, Guilford's defense counsel submitted an affidavit responding to each of Guilford's Rule 61 claims.[34] Court-appointed postconviction counsel moved to withdraw after finding no meritorious claims.[35] The Court granted postconviction counsel's motion to withdraw and granted Guilford additional time to respond.

---

[29] D.I. 47.

[30] D.I. 55.

[31] D.I. 51.

[32] D.I. 52.

[33] D.I. 57 and 70.

[34] D.I. 67.

[35] D.I. 59–61.

Guilford filed an amended brief,[36] the State responded,[37] and Guilford, although given the opportunity to file a reply, failed to do so. This matter is now more than ripe for decision.

## II.    DISCUSSION

All three of Guilford's motions collaterally challenging his conviction and sentence fail. Sentence modification and postconviction relief are only granted when a defendant clears the procedural hurdles of Rules 35 and 61 and the claims substantively merit relief. As detailed below, this Court finds the motions are either procedurally barred or lack merit and are, thus, DENIED.

### A. Defendant is not entitled to relief under Rule 35(a).

Rule 35(a) permits this Court to "correct an illegal sentence at any time."[38] Illegal sentences include those that exceed statutory limits, violate double jeopardy, are ambiguous regarding the time and manner of service, are internally contradictory, omit a statutorily required term, are uncertain in substance, or are unauthorized.[39] Rule 35(a) allows this Court to "correct a sentence imposed in an

---

[36] D.I. 68.

[37] D.I. 69.

[38] Super. Ct. Crim. R. 35(a).

[39] *Brittingham v. State*, 705 A.2d 577, 578 (Del. 1988) (citations omitted).

illegal manner" within 90 days after its imposition,[40] but curbs Court consideration of untimely applications to only those claiming "extraordinary circumstances."[41]

Guilford contends his sentence is illegal for two reasons; first he alleges he was sentenced to 17 years minimum mandatory at Level V when a portion of the Level V time could be served concurrently[42] and, second, he was subjected to multiple sentences in violation constitutional principles against double jeopardy because the Court did not merge his sentences. Guilford is wrong on both counts.

Guilford begins by arguing that because the parties acknowledged a portion of his sentence could run concurrently, the Court's sentence and holding that "17 years at Level 5 is mandatory and cannot be reduced or suspended"[43] is "ambiguous" and "internally contradictory."[44] Guilford is incorrect; because he conflates statutory minimum mandatory sentences with whether a court may order a portion of two minimum mandatory sentences be served concurrently.

Here, the Court's sentence correctly articulated the minimum mandatory sentences as totaling 17 years at Level V. The Delaware Criminal Code, enacted by the state legislature, sets forth minimum mandatory periods of incarceration for

---

[40] Super. Ct. Crim. R. 35(a).

[41] *Id.*

[42] D.I. 52 ¶¶ 9–11.

[43] D.I. 34 ¶ 3.

[44] D.I. 52 ¶¶ 12 & 13.

certain crimes.[45] The Court has no authority to suspend the minimum mandatory portion of any sentence.[46] According to statute, Guilford was subject to three statutory minimum mandatory periods of incarceration for his convictions of Manslaughter,[47] PFDCF,[48] and PFBPP.[49] Separately, in limited circumstances, 11 *Del. C.* § 3901(d) permits a sentencing judge, as a discretionary matter, to impose certain minimum mandatory terms of imprisonment concurrently or consecutively. It follows that the sentencing judge could have ordered the sentences for Manslaughter and PFBPP be served concurrently—but she did not. Instead, the sentencing judge expressly chose to impose Guilford's Level V sentences consecutively.[50] The Court's Order denying Guilford's first Rule 35(b) Motion tacitly alludes to that discretion; the Court explained, "Concurrent Level 5 [was] not appropriate in this case."[51] That 11 *Del. C.* § 3901(d) permits the Court, as a

---

[45] 11 *Del. C.* § 1405(c).

[46] 11 *Del. C.* § 1405(d).

[47] *See* 11 *Del. C.* § 623 (classifying Manslaughter as a Class B felony); *see also* 11 *Del. C.* § 1405(b)(2) (the statutory range for a Class B felony is 2 years up to 25 years at Level V).

[48] *See* 11 *Del. C.* § 1447A(c) (classifying PFDCF as a Class B felony and imposing a 5-year minimum mandatory sentence where a defendant has been twice previously convicted of a felony); *see also* 11 *Del. C.* § 1405(b)(2) (the statutory range for a Class B felony 2 years up to 25 years at Level V).

[49] *See* 11 *Del. C.* § 1448(e)(2)(c) (requiring the minimum imposition of 10 years at Level V).

[50] Sent. Tr. 20:9–13.

[51] *Id.* ¶ 5.

discretionary matter, to impose certain minimum mandatory terms of imprisonment concurrently—and the sentencing judge declined to do so here—does not make Guilford's sentence illegal.

Guilford's second illegality argument, that the Court's sentence "to multiple punishments for a single offense" violates his constitutional right against double jeopardy under *State v. Gibson*,[52] is equally unavailing. Guilford misunderstands the holding in *Gibson.* That case concerned a defendant charged with four separate counts of the same offense, PFBPP, on different dates.[53] In contrast, Guilford was convicted of one count each of Manslaughter, PFDCF, and PFBPP—all separate offenses that do not merge.[54]

The Court reaches this conclusion by applying the *Blockburger* test, and finds each offense requires "proof of a fact that the other does not."[55] Under 11 *Del. C.* § 632, Manslaughter is defined as (1) recklessly causing the death of another person, (2) causing death with the intent to inflict serious physical injury, using means likely to cause death, based on what a reasonable person in the defendant's situation would

---

[52] *See generally* D.I. 56; *State v. Gibson*, 2024 WL 939724 (Del. Super. Mar. 4, 2024).

[53] *State v. Gibson*, at *2.

[54] D.I. 30.

[55] *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (the *Blockburger* test states that when a single criminal act violates two distinct statutory provisions, the determination of whether there are two offenses or only one depends on whether each statute requires proof of a fact that the other does not); *See also, McGuiness v. State*, 312 A.3d 1156 (Del. 2024) (citing *White v. State*, 243 A.3d 381, 399 (Del. 2020)).

perceive, or (3) intentionally causing death while under extreme emotional disturbance, which does not qualify as murder. Under 11 *Del. C.* § 1447A(a), a person possessing a firearm or projectile weapon during the commission of a felony is guilty of PFDCF. In contrast, PFBPP under 11 *Del. C.* § 1448 provides that individuals convicted of a felony or violent crime involving physical injury are prohibited from possessing firearms or ammunition. If such a person, due to a violent felony conviction, negligently causes serious injury or death while possessing a firearm, they commit a class B felony with a minimum sentence of ten years at Level V if he was previously convicted of two or more violent felonies.[56] Manslaughter does not merge with PFDCF or PFBPP because it requires death, as a separate element; nor does it require the use of a weapon.[57] Likewise, PFDCF requires the contemporaneous commission of a separate felony. Moreover, while the elements of PFDCF might overlap with PFBPP, 11 *Del. C.* § 1448(e)(2)(d) reflects the General Assembly's intent for PFBPP to be punished separately. The statute specifies that PFBPP is not a related or included offense and does not

---

[56] 11 *Del. C.* § 1448.

[57] *See, e.g., State v. Melendez*, 2024 WL 1005567, at *4 (Del. Super. Ct. Mar. 7, 2024) (finding Assault First Degree and PDWBPP do not merge under the "Blockberger" test) and *Samuel v. State*, 694 A.2d 48 (Del. 1997) (finding weapons offenses did not merge with assault charges).

preclude sentencing under other provisions of the Code.[58]  Because each offense requires proof of a distinct fact and § 1448(e)(2)(d) indicates a specific legislative intent to punish PFBPP separately, Guilford's convictions do not merge for sentencing purposes under the *Blockburger* test.  Further, the record shows no evidence that Guilford requested the sentencing judge merge the offenses.

For all these reasons, the Court finds the sentence imposed was legal. Accordingly, Guilford's Rule 35(a) Motion lacks merit and is DENIED.

**B. Defendant is not entitled to relief under Rule 35(b).**

Under Superior Court Criminal Rule 35(b), the Court has the discretion to reduce or modify a sentence of imprisonment if a motion is made within 90 days of sentencing.[59]  The Rule provides a reasonable period for the Court to reconsider its sentencing decisions[60] and a second chance to assess the appropriateness of the initial sentence.[61]  Sentence modification is only granted when a defendant clears the requisite procedural hurdles and substantively merits relief.

---

[58] 11 *Del. C.* § 1448(e)(2)(d) provides "Nothing in this paragraph shall be deemed to be a related or included offense of any other provision of this Code. Nothing in this paragraph shall be deemed to preclude… sentencing under any other provision of this Code."

[59] Super. Ct. Crim. R. 35(b).

[60] *Johnson v. State*, 234 A.2d 447, 448 (Del. 1967).

[61] *Hewett v. State*, 2014 WL 5020251, at *1 (Del. Oct. 7, 2014); *see also State v. Reed*, 2014 WL 7148921, at *2 (Del. Super. Dec. 16, 2014) (first citing *United States v. Ellenbogen*, 390 F.2d 537, 541–43 (2d. Cir. 1968); then citing *U.S. v. Maynard*, 485 F.2d 247, 248 (9th Cir. 1973); and then citing *State v. Tinsley*, 928 P.2d 1220, 1223 (Alaska Ct. App. 1996)).

Rule 35(b) motions filed after 90 days are generally time-barred, except under "extraordinary circumstances" or as provided by 11 *Del. C.* § 4217.[62] Delaware law imposes a heavy burden on the movant to demonstrate such circumstances to maintain the finality of judgments.[63] An untimely motion may only be excused if the extraordinary circumstances justifying the delay were entirely beyond the movant's control.[64] Nor will the Court consider repetitive requests for reduction of sentence.[65] Under Rule 35(b), "[a] motion is 'repetitive' as that term is used in Rule 35(b) when it is preceded by an earlier Rule 35(b) motion, even if the subsequent motion raises new arguments."[66] Moreover, unlike the 90-day time bar with its "extraordinary circumstances exception, the bar to repetitive motions has no exceptions and flatly "prohibits repetitive requests for reduction of sentence."[67]

Here, Guilford's Rule 35 Motion is barred as untimely, filed more than 90 days after his March 3, 2023 sentencing, with no "extraordinary circumstances" to justify the delay. It is further barred as repetitive; this is Guilford's second Rule

---

[62] Super. Ct. Crim. R. 35(b).

[63] *State v. Diaz*, 2015 WL 1741768, at *2 (Del. Apr. 15, 2015).

[64] *State v. Culp*, 152 A.3d 141, 145 (Del. 2016) (quoting *Diaz*, 2015 WL 1741768, at *2) (internal quotations omitted).

[65] Super. Ct. Crim. R. 35(b).

[66] *State v. Culp*, 152 A. 3d at 145.

[67] *Thomas v. State*, 2002 WL 310681804, at *1 (Del.).

14

35(b) motion. Additionally, the issue of concurrent sentencing[68] was already addressed and decided by this Court's May 16, 2023 Order denying his First Rule 35(b) Motion.[69] Finally, Guilford's request for a sentence review after completing 10 years of incarceration, based on leniency due to family circumstances and his participation in rehabilitative programs, is premature.[70]

Since Guilford's motion is procedurally barred, the Court will not consider the merits of his claim;[71] accordingly, his Second Rule 35(b) Motion is DENIED.

## C. Defendant is not entitled to relief under Rule 61.

Rule 61 provides incarcerated individuals a chance to seek redress from a prior sentence by setting aside a conviction if the Court lacked jurisdiction or if there is a sufficient factual and legal basis for a collateral attack on the conviction.[72] The Rule is "intended to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their convictions."[73]

Before reaching the merits of any Rule 61 claim, the Court must consider the Rule 61(i) procedural bars: (1) the motion must be filed within one year of the

---

[68] *Compare* D.I. 31, *with* D.I. 51.

[69] D.I. 34.

[70] D.I. 51.

[71] *State v. Reed*, 2014 WL 7148921, at *3 (Del. Super. Dec. 16, 2014).

[72] Super. Ct. Crim. R. 61(a)(1).

[73] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013), *as corrected* (Aug. 15, 2013).

conviction's finality or a retroactive right; (2) repetitive motions are prohibited unless certain requirements are met; (3) issues not raised before conviction are deemed waived unless cause or prejudice is shown; and (4) claims already finally adjudicated on the merits are precluded.[74]

Guilford's Rule 61 claims and the Court's rationales for denying them follow.

**1. Guilford's sentences do not merge.**

Guilford's Rule 35(a) Motion and Rule 61 Motion both argue the Court should have merged his sentences for Manslaughter and PFBPP.[75] Guilford's sentences for Manslaughter and PFBPP do not merge for sentencing purposes[76] so the argument does not support a claim for Rule 61 relief.

**2. Guilford waived any argument based on police misconduct.**

Guilford contends the police engaged in misconduct or deviated from protocol by not charging him with additional crimes, such as possession of cocaine.[77] Setting aside whether there is even a factual basis to conclude there was any misconduct, issues not raised before conviction are deemed waived unless cause or prejudice is shown under Rule 61(i)(iii). Guilford has shown neither.

---

[74] Super. Ct. Crim. R. 61(i) (1–4).

[75] D.I. 56 at 2–3.

[76] *See* Part II B, *supra.*

[77] D.I. 32 at 3; D.I. 36 at 6.

If Guilford sought such information to attempt to impeach officers, he was not constitutionally entitled to it because by pleading guilty, Guilford waived his right to hear and examine witnesses against him.[78] The plea colloquy reflects the Court questioned Guilford about the factual basis for his plea and Guilford freely admitted his guilt.[79] Accordingly, the Court found Guilford's guilty plea was knowing, intelligent, and voluntary.[80] Guilford is bound by his statements to the Court and cannot reopen his case to make claims unrelated to his guilt, particularly those involving impeachment evidence that would only be relevant at trial. Nor can this Court ascertain any prejudice to Guilford by the State's decision to forego charging him with additional crimes. Because Guilford waived any argument regarding police misconduct by pleading guilty, he cannot use it now to support a claim for Rule 61 relief.

### 3. Guilford did not establish a *Brady* violation.

---

[78] *Brown v. State*, 108 A.3d 1201, 1206 (Del. 2015) (explaining the "Constitution does not require the State to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant because a defendant who pleads guilty decides to forgo not only a fair trial, but also other accompanying constitutional guarantees and impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*.") (cleaned up). *See also*, *Carrero v. State*, 115 A.3d 1214 (Del. 2015) (TABLE) (denying postconviction relief when defendant claimed he was entitled to potential impeachment evidence prior to guilty plea); *Miller v. State,* 840 A.2d 1229 (Del. 2003) (same).

[79] Plea Tr. 8:3-9:2.

[80] Plea Tr. 9:3-5.

17

Guilford contends he is entitled to postconviction relief because the prosecution violated *Brady* by failing to disclose deleted cell phone calls and text messages between himself and the victim[81] and the full two-hour surveillance video.[82] Neither claim merits relief under Rule 61.

*Brady* teaches the State's failure to disclose exculpatory or impeachment evidence that is favorable to an accused and is material to the case violates the due process clause of the Fourteenth Amendment of the U.S. Constitution.[83] A violation may exist irrespective of the good faith or bad faith of the prosecution.[84] To comply with *Brady,* a prosecutor must "disclose all relevant information obtained by the police or others in the Attorney General's Office to the defense."[85] There are three components of a *Brady* violation: "(1) evidence exists that is favorable to the accused because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[86]

---

[81] D.I. 32 at 3; D.I. 35 at 4; D.I. 36 at 4–5.

[82] *Id.*

[83] *See generally Brady,* 373 U.S. 83 (1963). *See also Wright v. State,* 91 A.3d 972, 977 (Del. 2014) ("A *Brady* violation occurs where the State fails to disclose material evidence that is favorable to the accused, because it is either exculpatory or impeaching, causing prejudice to the defendant.").

[84] *Wright*, 91 A.3d 972 at 987.

[85] *See Starling v. State*, 130 A.3d 316, 333 (Del. 2015) (quoting *Wright*, 91 A.3d at 987–88).

[86] *See Cannon v. State*, 127 A.3d 1164, 1169 n.24 (quoting *Liu v. State,* 103 A.3d 515 (Del. 2014) (TABLE)). *State v. Wright*, 67 A.3d 319, 324 (Del. 2013), *as amended* (May 28, 2013); ("The State's failure to disclose exculpatory evidence . . . does not, alone and

The Court may consider any adverse effect from nondisclosure "on the preparation or presentation of the defendant's case."[87] But, in the context of a Rule 61 Motion seeking vacatur of a guilty plea, a defendant who later learns of *impeachment* information is not entitled to Rule 61 relief when the evidence does not bear upon whether the plea was made knowingly, intelligently, and voluntarily.[88] Conversely, a prosecutor's improper failure to turn over *exculpatory* evidence prior to a plea may establish a *Brady* violation, but suppression of the exculpatory evidence alone is insufficient to meet the test—the defendant must also show prejudice.[89] To satisfy the prejudice prong, a defendant must demonstrate that the

---

without more, constitute a *Brady* violation. The State must release evidence only when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'") (first citing *Brady*, 373 U.S. at 83; and then quoting *Bagley*, 473 U.S. at 682). *See also*, *Starling*, 882 A.2d at 756. (The "failure to disclose exculpatory evidence, . . . does not, alone and without more, constitute a *Brady* violation. The State must release evidence only when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'") (quoting *Jackson v. State*, 770 A.2d 506, 516 (Del. 2001)).

[87] *Wright*, 91 A.3d at 987-88 (citing U.S. v. *Bagley*, 473 U.S. 667, 683 (1985)).

[88] *Brown v. State*, 108 A.3d 1201, 1201 (Del. 2015) (citing *United State v. Ruiz*, 536 U.S. 622, 623 (2002)(holding that the "Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor")).

[89] *State v. Wright*, 67 A.3d 319 at 324; *Starling*, 882 A.2d at 756.

19

suppressed evidence "creates a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[90]

Guilford's first *Brady* claim is that the State failed to turn over the victim's cell phone log and texts. The first element of *Brady* requires the existence of evidence that is favorable to the accused.  Here, the State contends it turned over the entire cell phone extraction to the defense.[91]  Defense counsel confirmed "the cell phone extraction from the victim's cells phone . . . indicated when messages and calls had been deleted . . . [and] did not show the phone calls and text messages which Guilford sought, nor did it show that those calls or messages had been deleted."[92]  Accordingly, in the absence of any evidence to corroborate Guilford's claim, the Court concludes he has failed to present facts to substantiate the State possessed or controlled any exculpatory data from the victim's cell phone. Further, both Guilford and his counsel were aware of the cell phone data at the time of Guilford's guilty plea, during which he knowingly, intelligently, and voluntarily waived any trial right to test the validity of the cell phone evidence.[93]  Accordingly,

---

[90]*Cannon*, 127 A.3d at 1169 n.24 (quoting *Liu v. State*, 103 A.3d 515 (Del. 2014) (TABLE)) (emphasis in original).  *See also Starling*, 882 A.2d 747 at 756.

[91] D.I. 40.

[92] D.I. 67 ¶ 6A.

[93] *Brown v. State*, 108 A.3d 1201, 1202 (Del. 2015) (when defendant admits the committed the crime of which he is accused in a valid plea colloquy, he may not re-open his case to make claims that do not address his actual guilt) (citing *United States v. Ruiz*, 536 U.S. at 623).

this Court cannot find a *Brady* violation based on the purported deletion of cell phone texts or logs.

Next Guilford contends the State violated *Brady* because it did not turn over the entirety of the two-hour Barbershop surveillance video.[94] The existence of the full surveillance video is not disputed, but under the first prong of *Brady*, the suppressed evidence must also be exculpatory. A factual and legal issue exists as to whether the video was exculpatory, that is, tending to negate the defendant's culpability. Guilford argues the missing surveillance footage would have helped him establish a justification defense; whereas, the State disputes the exculpatory nature of the footage. Another factual issue exists as to the second *Brady* component: whether the State suppressed the evidence. The prosecution argues it turned over the entire two-hour video,[95] but defense counsel states she only received a 4.5-minute partial clip that recorded the murder and Guilford's flight from the scene.[96] The third component of *Brady* requires that the prosecution's suppression of the exculpatory evidence cause prejudice to the movant. It is here that Guilford's claim fails.

---

[94] D.I. 37 at 6.

[95] D.I. 41 at 1.

[96] *Id*.

21

To secure a *Brady* violation, Guilford must establish prejudice to his case. In the context of a guilty plea, this requires Guilford to establish that had the full surveillance video footage been known to him at the time of the guilty plea, he would have rejected the plea offer and proceeded to trial. Although Guilford and his counsel contend they were not aware of the full video's existence until after the guilty plea,[97] nowhere in his many submissions does Guilford argue he would not have entered the guilty plea and demanded trial. Nor does he contend his guilty plea and concomitant waiver of the right to trial were unknowing or involuntary. Finally, Guilford's argument that not having the full video prevented him from pursuing a self-defense argument[98] is directly refuted by both his defense counsel and postconviction counsel. The disputed video was one of six available recordings the incident[99] and thus cumulative of other evidence already in the defendant's possession. Defense counsel affirmed she had access to all the other videos, the portion the disputed video recording the murder and defendant's flight, and eye-witness testimony, all of which allowed her to negotiate a reduced plea to Manslaughter.[100] Postconviction counsel concurred. Prior to withdrawing,

---

[97] D.I. 67 ¶ 6B.

[98] *Id.*

[99] D.I. 41 at 1.

[100] *See* D.I. 67 ¶ 4 ("Had this case proceeded to trial, counsel would have presented a self-defense theory. Additionally, this self-defense claim was one of the factors discussed and considered by the parties during plea negotiations."); D.I. 40 at 9 (Guilford "benefitted

postconviction counsel reviewed the entire video and concluded it would *not* have aided Guilford's self-defense argument.[101]

Without reaching a conclusion regarding the first two components of *Brady*, the Court concludes Guilford did not demonstrate that the State's alleged failure to provide the entirety of the disputed video created a reasonable probability that, had it been disclosed, he would have chosen to go to trial. Accordingly, this Court cannot conclude the State's actions prejudiced the outcome of his case, negating a *Brady* violation and Guilford's derivative claim for postconviction relief.

### 4. Effectiveness of Trial Counsel.

To prevail on an ineffective assistance of counsel claim, a movant must establish his Sixth Amendment right to effective assistance of counsel was violated under the two-part test established by the U.S. Supreme Court in *Strickland v. Washington*[102] as adopted by the state of Delaware.[103] Under the *Strickland* test, the movant must show "first, that his counsel's representation fell below an objective standard of reasonableness and, second, that the deficiencies in counsel's

---

from the plea agreement and the parties considered his potential self-defense claims when crafting the heavily negotiated terms").

[101] D.I. 60 at 22.

[102] 466 U.S. 668 (1984).

[103] *Albury v. State*, 551 A.2d 53 (Del. 1988).

23

representation caused him substantial prejudice."[104]    The first prong of the test requires the movant to "overcome 'a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'"[105]    The Court must objectively evaluate counsel's performance, focusing solely on what is constitutionally required, rather than what might be possible, prudent, or appropriate.[106]  The heart of the Court's analysis under the first *Strickland* prong is whether trial counsel's choices, strategies, and decisions, when viewed as a whole, were reasonable.[107]    Thus, the burden rests with the movant to "establish his counsel's performance was objectively unreasonable," meaning no reasonable lawyer would have conducted the defense in the same way.[108]

To the extent a movant establishes a performance deficiency by counsel, he must still overcome the second *Strickland* prong by proving that this deficiency prejudiced the outcome of his case.  In evaluating such a claim, concrete allegations of prejudice, including specifying the nature of the prejudice and the adverse effects

---

[104] *Green v. State*, 238 A.3d 160, 174 (Del. 2020) (citing *Strickland*, 466 U.S. at 687–88).

[105] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[106] *Id.* (quoting *Burger v. Kemp*, 483 U.S. 776, 107 (1987)).

[107] *Id.* (citations omitted).

[108] *Id.* (citing *Burger*, 483 U.S. at 791).

actually suffered are required;[109] the Court dismisses conclusory allegations.[110] When a movant collaterally attacks a guilty plea based upon ineffective assistance of counsel, as Guilford does here, he must prove counsel's actions were so prejudicial that there is a reasonable probability that, but for counsel's errors, the defendant would have insisted on going to trial instead of pleading guilty.[111] "A reasonable probability means a probability sufficient to undermine confidence in the outcome, a standard lower than more likely than not. The likelihood of a different result must be substantial not just conceivable."[112] Failure to satisfy either *Strickland* prong renders the Rule 61 claim insufficient.[113]

Guilford contends his trial counsel was ineffective for failing to challenge purported police misconduct, subpoena witnesses, obtain the full two-hour Barbershop surveillance video, call logs, and text messages, provide him with discovery, and move to suppress the Barbershop surveillance video—and that, cumulatively, all these failings compelled him to plead guilty. None of these claims are sufficient to establish ineffective assistance of counsel.

---

[109] *Strickland*, 466 U.S. at 692; *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

[110]*Younger v. State*, 580 A.2d 552, 555; *Jordan v. State*, 1994 WL 466142, at *1 (Del. Aug. 25, 1994).

[111] *MacDonald v. State*, 778 A.2d 1064, 1075 (Del. 2001); *see also Somerville v. State*, 703 A.2d 629, 631 (Del. 1997) (citing *Albury*, 551 A.2d at 58–60).

[112] *Green*, 238 A.2d at 174 (quoting *Starling*, 130 A.3d at 325).

[113] *Strickland*, 466 U.S. at 687; *Dawson*, 673 A.2d at 1196.

### a. Purported Police Misconduct

Guilford contends his counsel was ineffective for failing to challenge alleged police misconduct.[114] Again Guilford appears to be focused on law enforcement's decision not to charge him with possession of cocaine, believing that if he had an opportunity to confront officers with Operation Safe Streets, and if they were unable to produce the cocaine, the "gun charge could be thrown out."[115] Defense counsel disputes this amounted to police misconduct and, for strategic reasons, chose not to pursue the issue at the risk of Guilford being charged with yet another felony.[116] After reviewing the record, this Court cannot readily ascertain an evidentiary or strategic reason for counsel to have sought an evidentiary hearing to challenge this issue; accordingly, I find no performance deficiency under *Strickland*. Further, as discussed above,[117] Guilford claims the police failed to preserve or extract information from the victim's cell phone,[118] violating Guilford's rights. He says he might have called the victim's girlfriend to cross examine her regarding whether she tampered with the phone.[119] But again, by pleading guilty and waiving the right to

---

[114] D. I. 32 at 3; D.I. 37 at 5.

[115] D.I. 37 at 5.

[116] D.I. 67 ¶ 5.

[117] *See supra* § II.C.2.

[118] D.I. 50 at 4.

[119] *Id.* at 5.

trial, Guilford waived any pre-plea errors and the right to hear and question witnesses against him in the absence of cause or prejudice—and the Court finds none here.

### b. Witness Subpoenas

Guilford contends his counsel was ineffective for not subpoenaing (1) a witness who could testify the victim allegedly "kept calling . . . and texting" Guilford "until [Guilford] blocked him[,]" and (2) a family member of the victim who allegedly heard him say he "was on his way to kill [Guilford]" before the incident.[120] Guilford elected to enter a guilty plea, resolving all instant charges against him. In so doing, he waived the right to a trial and call witnesses in his defense. Further, defense counsel stated she attempted to locate and interview all potential defense witnesses identified by Guilford and leveraged information pertinent to a self-defense argument to obtain a reduced plea from the State.[121] Accordingly, the Court finds no deficiency in counsel's performance for failing to subpoena witnesses under *Strickland*.

### c. Existing Evidence

Guilford claims his counsel was ineffective for not asserting a self-justification defense.[122] This claim is not supported by the record. To recap, the cell

---

[120] D.I. 32 at 3; D.I. 35 at 4; D.I. 37 at 3, 5; D.I. 43 at 4–5.

[121] *See supra* note 100.

[122] D.I. 36 at 3–4.

phone extraction did not support Guilford's claims, as it showed no deleted calls or messages."[123] Defense counsel attempted to obtain surveillance video independently but was informed it no longer existed.[124] She sought to interview all potential defense witnesses identified by Guilford.[125] She then successfully negotiated a significantly reduced plea based on self-defense.[126] Guilford had the option to refuse the plea offer and go to trial to present a justification defense, but chose instead to plead guilty, waiving his right to trial. Guilford's factually unsupported contentions do not establish counsel's performance was objectively unreasonable under *Strickland*.

### d. Delivering Discovery

Guilford contends his counsel was ineffective for not timely providing him with certain discovery items, including the autopsy report, redacted witness statements, the cell phone extraction report, and photographs of the weapon and clothes.[127] Initially, a protective order limited the dissemination of discovery, preventing counsel from sharing certain witness-identifying information with

---

[123] D.I. 67 ¶ 6A.

[124] D.I. 67 ¶ 6B.

[125] D.I. 67 ¶ 2.

[126] *See supra* note 100.

[127] D.I. 32 at 3; D.I. 35 at 4; D.I. 37 at 3, 5; D.I. 43 at 4–5.

Guilford.[128]  Counsel stated Guilford agreed to the protective order and she provided him non-protected discovery, while showing or discussing the remaining items, including all surveillance videos.[129]  Guilford acknowledges receiving the disputed discovery before "the defense deadline" and, in any event, well before pleading guilty.  Thus, the Court finds counsel's performance was reasonable under *Strickland*.  Further, by entering the guilty plea, Guilford waived any pre-plea defects.

### e. Suppressing Surveillance

Guilford's contention his counsel was ineffective for not moving to suppress the Barbershop surveillance video on constitutional ground is meritless.[130]  First, Guilford waived any alleged defects by entering a guilty plea. Second, there was no unreasonable search or seizure as the surveillance video at issue were obtained from a business—not from Guilford, his residence, or any other location where he had a reasonable expectation of privacy.  Because there were no factual or legal grounds supporting suppression of the surveillance video, counsel's decision not to move for suppression was reasonable under *Strickland*.

### f. Counsel's Conduct

---

[128] D.I. 5.

[129] D.I. 67 ¶ 1.

[130] D.I. 37 at 4.

29

Guilford contends his counsel's "pervasive ineffectiveness" during pretrial proceedings and misinformation about the 17-year minimum mandatory sentence led him to plead guilty.[131] Not so. Guilford signed the Plea Agreement acknowledging a minimum mandatory sentence of 17 years at Level V, with specific terms for Manslaughter, PFBPP, and PFDCF, due to his prior convictions (PFBPP in 2017 and Drug Dealing in 2015).[132] He signed the TIS Form acknowledging a 17-year minimum and a 70-year maximum.[133] He is bound by the statements he made during his guilty plea colloquy, during which he admitted the offenses, understood the penalties, and expressed satisfaction with his counsel.[134]

Post-plea, the State informed the Court that, as a discretionary matter, it could impose concurrent sentences for the Manslaughter, PFBPP, and VOP offenses.[135] Defense counsel communicated this to Guilford by letter and in discussions before sentencings[136] as she was ethically required to do.[137] That the Court chose to impose Guilford's minimum mandatory sentences for Manslaughter and PFBPP consecutively does not evidence ineffective assistance of counsel under *Strickland*.

---

[131] D.I. 36 at 8-9; D.I. 37 at 4–5; D.I. 53 at 2–3.

[132] Plea Agr.

[133] TIS Form.

[134] Plea Tr. 6:3–4, 6:20–7:2, 8:2–9:2.

[135] *Id.*

[136] D.I. 61 at A21; D.I. 67 ¶ 3.

[137] See Delaware Lawyer's Rules of Professional Conduct 1.4.

And even if there were evidence counsel's representation fell below an objectively reasonable standard, Guilford cannot establish prejudice under *Strickland* because any advice indicating a 15-year sentence might be imposed would have only benefitted Guilford.[138]

## III. CONCLUSION

Guilford's motions under Rules 35(a), 35(b), and 61 are either procedurally barred or lacking in merit. Guilford entered a guilty plea to three offenses that carried minimum mandatory period of imprisonment related to homicide. The 17 year Level V minimum mandatory sentence was legal under Rule 35(a) and Guilford has not shown entitlement to a sentence reduction under Rule 35(b). There was no *Brady* violation and defense counsel was effective, ensuring Guilford's plea was knowing, intelligent, and voluntary, negating his Rule 61 claims. Accordingly, Guilford's Rule 35 and Rule 61 Motions are **DENIED.**

**IT IS SO ORDERED.**

/s/ Kathleen M. Vavala
The Honorable Kathleen M. Vavala

---

[138] *Compare Strickland*, 466 U.S. at 692, *with State v. Newton*, 1998 WL 731570 (Del. Super. May 29, 1998) (prejudice was established where counsel failed to advise the defendant the minimum mandatory was higher than what he advised).